Good morning. I'm still David Porter, Assistant Federal Defender from Sacramento, on behalf of the appellant Mr. Raul Castellanos. This Court has obviously heard a lot of argument about three strike cases this morning. What I'd like to focus on is a question by Judge Fletcher in terms of the policies of the California three strikes. She said that it seems to be very unwise. I would certainly agree. But is that relevant for the Court's analysis? And the first Deputy Attorney General suggested no, that's a matter beyond this Court. This Court can't look at policy issues, can't look at that sort of thing. I would disagree. In the case last year, the landmark case of the United States Supreme Court, Roper v. Simmons, the High Court declared unconstitutional the death penalty against juveniles. And it said to implement the Eighth Amendment framework, the Court long ago, quote, established the propriety and affirmed the necessity of referring to, and then there's internal quotes, the evolving standards of decency that mark the progress of a maturing society, to determine which punishments are so disproportionate as to be cruel and unusual. The Roper Court was quoting Troop v. Dulles, the 1959 landmark Supreme Court case. But what the Court did in Roper, it looked at evolving standards of decency. And I would urge this Court, in my reply brief, I submitted two examples of the evolving standards of decency of California. One is the proposition that is being supported by, and in fact written and supported by, Steve Cooley, who's the district attorney of the most populous county in California and the country, that would require the third strike also to be a serious or violent felony. And an almost identical bill, Senate Bill 1642, that was authored by Senator Gloria Romero, that also requires the third strike to be a serious or violent felony. There was. It was leading up until three weeks before the election. It was leading 67 to 13 percent. Very creative and interesting. But when the statute passes, then we'll know what the evolving standard of decency is. Meanwhile, it's not. Well, I think it's important to note that a large majority of the California populace was supporting the proposition. I think that is a standard that the Court should look to. Before they voted against it. Before the Honorable Governor of this State went on the airways. Former Honorable Governor of the State. No, but honestly, the Governor, in the commercials that led up to the defeat of this, said that 14,000 inmates would be released, which the Superior Court judge in Sacramento prohibited the opponents of the ballot measure from putting on the ballot pamphlet, because it was not accurate. That was the number of second strikers, not the number of third strikers who would be resentenced. It was only 1,400 or less people who would have been resentenced had that initiative passed. So I think that it was clearly the result of a fear-mongering, and the defeat of that proposition does not indicate the true will of the people of California who are going to amend the three strikes. Kastelanos, unlike these other two, current crime is felony possession. That's correct. And what I'd like the Court to note on that is that Mr. Kastelanos was arrested, patted down, put in the police car, and then turned to the policeman and said, I think you should know this. I've got a gun. That was quite interesting. I mean, he admitted that he had the weapon. And, you know, the reason was that he was afraid of a person who was threatening him and his uncle. So there are extenuating circumstances to the felon in possession crime. But it, too, like the possession of small amounts of drugs, is basically a victimless crime. There was no injury done. And here, too, there were no — this is not a — The Federal system, as I recall, and I certainly don't know the exact numbers, has quite serious penalties for felony possession of a firearm with prior convictions. Yes, it does. I don't know if it has 25 years, but it has a lot. There are certain mandatory minimums that I've — Ten and then 15 if it's three, and it escalates. But it's mandatory. I think it's a mandatory. It starts mandatory at 10 and then goes to 15. Ten and 15. I would defer to the district court judge on this matter as an appellate lawyer. But there are two — well, I think there's one primary factor, as to the facts of this case, other than the fact that he told them that he had the gun, that I'd like to point out to the Court to emphasize why Mr. Castellano should be given relief. This was his first time in prison on the current strike. He went to California Rehabilitation Center for two to three days, was rejected there, and so this sentence is his first actual prison sentence. And so — Why he was let out after three days? I think that the California Rehabilitation Center has great discretion in deciding who it will admit to its programs if they think that the person — And otherwise you just don't serve any time at all? No. This was very abnormal. And I would point the Court to the declaration of Mr. Castellano, who said, I really don't know why I only got two to three days, but when I went back to court, one of the officers there asked me to participate in some undercover operation. I agreed. It was all worked out. My lawyer did it. I don't know. So — and in Rommel, which — in this Court, the Court of Appeals relied solely on the Rommel v. Texas case. And in that case, the Supreme Court really relied very heavily on the fact, look, this person is a three-striker. He's committed a crime. He went to prison. He committed another crime. He went to prison. And then he committed the triggering offense. And when society has told a person repeatedly and he's been given these opportunities and he's been given this punishment, he knows what he's in for, and that makes it — that makes it constitutional under the Eighth Amendment for the third strike to be a life sentence. And there, with possibility of parole after seven years, here, of course, there is no parole, even possibility, until 25 years, and the person must serve the absolute minimum. There is no good-time credit for a three-striker under California law. He serves the absolute minimum of 25, and then it's only the possibility that he'll get parole. And because the three-strikes law is so relatively new, we don't know what the possibilities for parole will be. But if they continue to be how they are for life, prisoners in this state, then there is very, very little chance that these people will be paroled. How old was he in 1989? I was afraid Your Honor would ask that question. He was 86. He was a juvenile. He is 36 years old now. So 17. He was 19, right? 17 years. 17, yes. That's right. And what exactly was that prior? The strike priors were willful discharge of a firearm in a negligent manner and shooting at an inhabited dwelling. Shooting at an inhabited dwelling. And was it the same thing or different things? I believe those were also, as in Mr. Barbosa's case, a single transaction and a single proceeding. Yes, because they were prosecuted on or he was sentenced to both of them on June 29, 1989. Was this just one shot? In other words, this wasn't even sequential. Is that right? I believe that's correct, yes. And then in between, what convictions does he have in between? I don't think he has any. Well, I'm sure that the Deputy Attorney General can help me with that question. I'm going to find out. I'm sorry. I don't have that information. Thank you.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning. May it please the Court, and we're CFA with the Attorney General's Office representing Respondent Apelli in this matter. First, I just want to address some of the issues raised with respect to the criminal history. The petitioner in this matter did serve time for a burglary conviction in California Youth Authority and was indeed on parole at the time that he committed the two offenses that constituted the first two strikes. Was that as a juvenile? The burglary was as a juvenile. He was still on parole from CYA, but he was at the time of the two strike offenses, I believe, 19. He was 20 when he was sentenced. Is there any history between 19 and this offense where there was a third strike? There is history in the sense that when he was committed the current strike, the third strike, there was a bench warrant out for his arrest. And when the 246 for another shooting into a dwelling, another firearms violation. Now, there's no indication that he was actually convicted, but he was found to be, had three bench warrants out for his arrest at the time of the current offense. And when they went to arrest him, he was found to be in possession of the firearm, which gave rise to the third strike, which was the only conviction on this last complaint. Now, this crime was committed in 1994. Is that right? The third strike, I believe, was committed in, I think the conviction was in 94. I have to look exactly, but it's around that time. But the habeas proceedings are just going on now? I think there was a stay of proceedings. There was a stay of the habeas proceedings in the district court. I did not handle that case from review of the record. It appears that there was a stay. I don't know if it was for exhaustion purposes, but the stay was lifted, so it has been ongoing for a number of years in the district court. That means it was actually five years between this conviction and the earlier one, the strike conviction. That would be a good estimate. Also, it appears from the bench warrants, which were never, that he was arrested for when he was found in possession, those appear to be for acts that occurred in 91, but there were no convictions on the record for this. I'm pretty sure I can't do anything with that. He wasn't convicted. He wasn't convicted. And also, with respect to the two prior strikes, they were not a single proceeding. They were sentenced at the same time, but they were two different case numbers and they were two different incidents. And with respect to the record, that's in the Appellate's Outsource of Records at tab 2, 88 through 91,  And the first incidents dealing with the discharge of a firearm with gross negligence occurred on June 9, 1989. And the appellant, or in this case, petitioner, admitted to the shooting. He shot into a vehicle, breaking the windshield. Another witness also had her vehicle struck, and there's another one that hit her tree. That was just the one incident, the one strike. The next day, on June 10, 1989, there was a separate incident, which is the basis of the second strike that was charged in a separate complaint. And at that point, the appellant was convicted of shooting into an inhabited dwelling, and there he shot into an occupied residence. The resident heard the gunfire and admitted to shooting into the residence. Those are based on the factual basis for the plea that's in the record. So these were not – these were two separate incidents. All – the current strike is a felony conviction. It's a conviction for felon in possession of a firearm, which is something that is a threat to society, and there is a strong public policy reason for not allowing felons to have firearms. It is not a victimless or no-threat-of-violence type of offense. And the two priors that gave – that gave the basis for the two strikes, both involved the use of a firearm with people near. Yes, he didn't hit anyone, but these certainly involved the threat of violence. There is no question. So I think this case is clearly much more severe than any of the cases that have been discussed where the court found that there was cruel and unusual punishment for a third strike. Also, this is a 25-to-life case, which is certainly a reasonable and not grossly disproportionate sentence given the severity of the crimes. Thank you very much, counsel. Ms. Fay is absolutely correct. They were on successive days, the priors, but they were charged in a single proceeding. So I apologize for – I think I was confusing it with the earlier case where the priors were part of a single transaction. In answer to Judge Berzon's question, the case took quite a while to get to trial, from 1994 to 1996. The trial didn't start until 96. The direct appeal wasn't over until 98. He had several – a series of State post-conviction habeas proceedings that took quite a while. In 2000, the Federal petition was filed, and it was stayed pending the Supreme Court's decision in Andrade and Ewing, and that's – accounts for the delay in the proceedings there. Thank you very much. Thank you, counsel. The case of United States v. – I'm sorry, Castellanos v. Hubbard is submitted. And we will go on to Bishop v. the Contra Costa Superior Court. Thank you.
judges: B. Fletcher, Berzon, Trager